BEFORE THE FIRST DIVISION

SEPTEMBER 9, 1965

**No. 69537.**—Norman G. Jensen, Inc. v. United States, protests 64/7170, etc. (Seattle)—

NICHOLS, Judge: These cases are before the court on a motion made by the Government to dismiss the protests and assess penalties on the ground that the

protests fail to state a claim upon which relief may be granted by the court and are frivolous.

The merchandise consists of spruce lumber imported from Canada and entered at Portal, N. Dak., and Noyes, Minn., on various dates from September 1963 through January 1964. Entry was made under U.S.I.D. Anno. Reporting No. 202.0340 at 35 cents per thousand feet, and duty was assessed at said rate under item 202.03 of the Tariff Schedules of the United States, *infra*.

The protests were filed and signed by Norman G. Jensen, Inc., the plaintiff herein, a customs broker. A typical protest states:

Protest is hereby made against your liquidation or your decision assessing, imposing or collecting duty, fees, or other exactions, or excluding any merchandise from entry or delivery, or your refusal to reliquidate for error, in connection with the entries or other matters referred to below. The reasons for objection under the tariff act of 1930 or any amendments thereto are as follows:

Spruce lumber was entered at the rate of 35 cents per M. FBM, and the entries were liquidated as entered; it is claimed that 25 cents per M. FBM is the correct rate of duty.

It is further claimed that said merchandise should have been classified as entered, or as a manufactured or unmanufactured article under paragraph 1558, or at the rates prescribed by any of the provisions above cited, by virtue of the similitude or the mixed material clause in paragraph 1559, or of a foreign trade agreement. Each of the claims asserted herein is made with the proviso and condition that the duty claimed is less than the duty assessed.

These cases were noticed for trial by the defendant and were called at Fargo, N. Dak., on June 30, 1964. Plaintiff appeared by counsel for limited purposes, including a request for transfer to Seattle. This request was granted without prejudice to the Government's right to file written motions. The present one was filed on November 5, 1964. In response, the plaintiff corporation, by its fourth vice president and not by counsel, requested an extension of time to file objections. The court ordered the motion set down for oral argument at a term of court to be held in Seattle, Wash., on February 9, 1965, by attorneys duly admitted to practice before the court and authorized to represent the interested parties. In accordance with the order, oral argument was duly presented at Seattle by counsel for the respective parties and written memoranda have been filed.

We note that the Tariff Schedules of the United States, under which duty was assessed, became effective August 31, 1963, pursuant to the Tariff Classification Act of 1962, 76 Stat. 72, which amended the Tariff Act of 1930 by striking out titles I and II and substituting the new schedules, hereinafter referred to as TSUS. Schedule 2 of TSUS contains the following:

| 202.03 | Lumber, rough, dressed, or worked * * * <br> Softwood: <br>     Spruce (*Picea* spp.) _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 35¢ per 1000 ft., board measure |
| --- | --- | --- |

The Tariff Act of 1930, prior to said amendment (hereinafter referred to as the Tariff Act of 1930) had provided in paragraph 401, as modified by the General Agreement on Tariffs and Trade, T.D. 51802:

| 401 | Sawed lumber and timber not specially provided for, if of fir, spruce, pine, hemlock, or larch_ _ _ | 25¢ per 1000 ft., board measure |
| --- | --- | --- |

Section 514 of title IV of the Tariff Act of 1930 provides that all decisions of the collector, including the legality of all orders and findings entering into the same, shall become final and conclusive on all parties 60 days after liquidation, unless the importer shall "file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto."

The Government's motion which we are here passing upon, seeks relief under two distinct statutory provisions: (1) Dismissal of the protests under section 514 of the Tariff Act of 1930 for failure to state a claim with the particularity therein required, and (2) the assessment of a penalty for frivolity under 28 U.S.C., section 2641, 62 Stat. 982. These will be considered in that order and our decision on the first will aid in the disposition of the second.

It will be noted that the pertinent language of the protest is in the second paragraph, the remainder being the boiler plate of a printed form. The entries were made within 4 months after the Tariff Schedules of the United States came into effect and the entry under the new schedules was as required. However, customs officers, at that time, as we may judicially notice, were braced for protests and litigation challenging the right of the Tariff Commission to prescribe in the new schedules rates for merchandise which were higher than those which prevailed under the former law, with respect to the same merchandise. There were quite a number of such instances. By the most casual glance at the schedules and background material of the Tariff Classification Study on item 202.03, the collector could have ascertained that various lumber items previously dutiable at 25 cents per 1,000 feet were increased to 35 cents. This was done in order to "equalize" rates on lumber as a group and eliminate distinctions between rates applicable to lumber having the same qualities and use. However brief and cryptic the operating part of the protest may be considered to be, it is difficult to suppose with any plausability that the collector would have been unaware that the intention of the protest was to claim that the increase of rates was not authorized by Congress. If the collector was not personally aware of all this, he was a member of an institution, the United States Customs Service, which was so aware. As always, we refer to the collector as an institution, not an individual. While this interpretation of the intent of the protest would have been immediately obvious, no other interpretation could have readily suggested itself. Protests are frequently not drafted by lawyers, and this court has never insisted upon adherence to any technical rules of pleading when the intent of the protester was sufficiently clear. Accordingly, we hold that the protest sufficiently alleges that the old rates on lumber are still in effect because the new ones are not valid. Whether the point has any merit is, of course, a different question which we do not reach in passing on this motion.

We turn now to the question of frivolity. The statute in question, 28 U.S.C., section 2641, reads as follows:

The Customs Court shall, upon motion of counsel for the Government and may, upon its own motion, decide whether any appeal for reappraisement or protest filed under this chapter, under sections 1501, 1514, 1515, or 1516 of Title 19 or under section 1583 of this title is frivolous. If the court decides that such appeal or protest is frivolous, it shall assess a penalty of not less than $5 nor more than $250 against the person filing such appeal or protest.

All frivolous appeals for reappraisement or protests filed by the same person and raising the same issue shall be consolidated in one proceeding for the purpose of imposing such penalty.

We believe that a protest may be frivolous *ab initio* or may be *bona fide* in the beginning but become frivolous in the course of later proceedings, all within the intent of the statute. This is important.

We may suppose that Norman G. Jensen, Inc., was aware that the right of the Tariff Commission to raise rates in the new schedules was likely to be challenged. If such challenges had been successful, and if Jensen had failed to protect the rights of its clients to obtain reliquidation, it might have been charged with negligent representation. It would seem that persons representing others in the management of customs entries would only, at their peril, be ignorant of which entries involved protestible issues and that when they were aware, however dimly, that such issues existed, it became a practical necessity to protest, to protect the rights which would otherwise be lost by a running of the statutory finality provision. Such protective action is not frivolous merely because the protester lacks a personal belief in the merit of the protest or has no clearly defined plan for the conduct of litigation. The Jensen concern, not being attorneys, could not be expected to have such a plan. The protest has the two immediate effects of postponing the finalization of the liquidation and causing the Customs Service to review it. The protesting party may not desire litigation, but he must face the fact that the protest will go to court automatically if not sustained at the administrative level. Under these circumstances, the standards of frivolity that might be valid with respect to ordinary litigation seem inappropriate here. We hold that the protests were not frivolous when filed.

After the collector has completed his review and transmitted the papers to the court, later events may convert to frivolity an original *bona fide* protest not abandoned when it ought to have been. These events might include court decisions in test cases, or otherwise. So far, the customs bar has not displayed any great eagerness to try the protest issue herein, as we have defined it. Continued failure either to try the protested issue or to suspend under a trial actually conducted by another, might eventually establish the existence of frivolity. Any litigant ought to be willing to try an issue himself, if it is not suspended. We do not think that matters have yet reached the point where frivolity can be charged. In a protest, unlike an appeal, the Government has the money. Proceedings taken in appeal cases are more sensitive to a suspicion of frivolity because they can be intended solely to defer the liquidation and billing of additional duties.

It appears to the Government, and with reason, that it is undesirable for vague, ill-defined issues as to the validity of important tariff measures to remain unsettled for extended periods. The Government is not powerless in the premises, but with the best efforts of all concerned, it may not be possible to resolve everything at once. The procedures of the Tariff Act of 1930 are framed with reference to this situation and permit the public business to be done, and the revenues collected, regardless. It may be pointed out that if Mr. A. is successful in obtaining relief against a tariff exaction, and B, similarly situated, is not, because of failure to follow prescribed procedures, the result is extremely likely to be a private bill for B.'s relief, with all its complications and complexities. It may, therefore, be doubted if much is accomplished for certainty by preventing some persons from litigating substantive issues on procedural grounds, if others are free to do it. We do not think the filling up of court calendars with what we may call protective protests is such an evil as to necessitate arbitrary and harsh tightening of our court procedures.

Accordingly, the motion must be denied. However, the Government may renew it if the plaintiff does not move to amend its protests within 90 days, stating its grounds of protest in detail and with precision, or if, thereafter, further proceedings or nonproceedings establish adequate grounds for belief that the protests are frivolous.

WILSON, Judge: While in deference to Judge Nichols, who will hear the involved cases on their merits, I have signed the order denying the Government's motion to dismiss the protests in question, I cannot approve the attached memorandum. In my opinion, the reasoning therein does not warrant the conclusions reached. Furthermore, I do not favor the practice of writing long, or any other, memoranda to explain the court's rulings, in or out of court, when motions are granted or overruled.